“Plaintiff, a Government contractor disappointed by the results of the Department of Agriculture Board of Contract Appeals (agboa) , seeks our review of the Board’s decision, to which the Wunderlich Act applies. On the basis of the plaintiff’s original petition, the trial judge certified the case to us as one that involves only issues of law within Section 2 of the Act, 41 U.S.C. § 322. Plaintiff has recently taken notice of the Act, and by its amended petition now rephrases its attack *546 on the Board’s decision in accordance with Wunderlich Act-standards, and requests a trial. The Government had moved for summary judgment in response to plaintiff’s original petition, but the motion is no less appropriate now because we can still treat the dispute as one that centers over several legal questions. We grant -defendant’s motion, and dismiss the petition.
“On February 25, 1972, the Department of Agriculture awarded plaintiff this construction contract originally scheduled for completion on September 14,1972, but later extended by several equitable adjustments to March 30, 1973. Yet, plaintiff needed an additional 29 days to complete the work, on April 28, 1973, so the Department deducted $2,291 in liquidated damages from the plaintiff’s contract payments. ■ In addition, the Department deleted a portion of the work under the original contract, and reprocured that portion from. another contractor. The Department then deducted from plaintiff’s payments $6,300, the total costs of this work to the Government under the plaintiff’s contract. Plaintiff sought to recover from the Board both the assessed liquidated damages, $2,291, and the profit it alleges that it would have earned except for the deletion and reprocurement, $4,410. The Board denied any relief, agbca No. 413, 75-2 bca ¶ 11,378. Plaintiff-now attacks the Board’s conclusions as arbitrary, capricious and not entitled to finality.
“Plaintiff’s first contention is that its delay in performance resulted from its inability to hire enough employees because the Government’s delay of 8-months in approving a wage increase, apparently under the system of economic controls then in effect. Plaintiff submits that when it bid for the contract, it was relying on assurances of the Internal Beve-nue Service, the bureau then administering the economic controls, that a wage increase would be approved promptly. Plaintiff now complains that the agbca arbritrarily and capriciously ignored the IBS’ promises of wage increase approval. When plaintiff previously presented its case to the Board, the Board responded that plaintiff failed to show that the 8-month wage freeze impaired its ability to complete the contract on time. Bather, the Board’s comparison of plaintiff’s work diaries indicates that plaintif utilized substan *547 tially tbe same number of employees during and after the wage freeze. Since the results of this comparison are uncon-troverted, they furnish substantial evidence for the Board’s conclusion that plaintiff’s reliance on IRS’ assurances of an early thaw of the wage freeze was immaterial to its delayed contract performance.
“Plaintiff next complains that the Board arbitrarily denied plaintiff’s claim that there were 29 days of ‘bad weather’ during the performance period, which would justify its delay and relieve it of 29 days of liquidated damages. If inclement weather is plaintiff’s escape from liquidated damages assessed under Clause 5(c) of the contract, it must be weather that met the description contained in Clause 5(d) (1): ‘unusually severe weather’. That language implies a comparison of the weather that occurred during contract performance with what may be considered typical weather for that season. But plaintiff does not now allege that the weather, albeit inclement, was any worse than that usually endured during winter and spring. And even though the AGBCA treated plaintiff’s contention as an allegation of ‘abnormally bad weather’, 75-2 boa at 54,158, it rejected this point because plaintiff failed to present supporting evidence. Plaintiff has not done so yet, inasmuch as its statement that the relevant facts were a matter of common knowledge are legally insufficient, especially in view of our role in Wunderlich Act cases. So, again, we affirm the Board’s result.
“Plaintiff’s last claim is to recover the profit it would have earned if it were permitted to perform the portion of the work that the Department deleted and reprocured. The Board was clearly correct in denying relief, thereby implementing the principle that an equitable adjustment such as the Board could make under the contract for a change eliminating items of work does not include anticipatory profits for work not done. General Builders Supply Co. v. United States, 187 Ct. Cl. 477, 409 F. 2d 246 (1969). This is equally true, whether work is deleted under the ‘Changes’ or ‘Termination for the Convenience of the Government’ clauses.
“Accordingly, upon consideration of the pleadings, defendant’s motion to dismiss and petitioner’s opposition thereto, and the briefs and representations of the parties but *548 without oral argument, it is ordered that the motion to dismiss be granted and the plaintiff’s petition is dismissed.”